**FILED & ENTERED**

AUG 19 2022

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY fisherl    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>Robert Aleksanyan<br><br><br><br>Debtor(s). | CHAPTER 7<br><br>Case No.: 1:19-bk-11692-MT<br>Adv No:  1:21-ap-01072-MT |
| Charles Bacquet, Victoria Bacquet<br><br>Plaintiff(s),<br>v.<br><br><br>Robert Aleksanyan<br><br><br>Defendant(s). | **NOTICE OF TENTATIVE RULING DENYING MOTION FOR SUMMARY JUDGMENT**<br><br>Date:    August 17, 2022<br>Time:   1:00 p.m.<br>Courtroom:  302 (via ZoomGov.com) |

At the above date and time, the Court held a hearing on the Motion for Summary Judgment (the "Motion"), filed by Plaintiff .  Appearances are as noted on the record for the hearing.  At the hearing, the Court adopted its tentative ruling on the Motion.  A copy of the Court's tentative ruling is attached to this cover page.

-1-

On or about February 9, 2012, Charles and Victoria Bacquet ("Plaintiffs") entered into a written agreement (the "Contract") with Defendant to perform work on Plaintiffs' swimming pool. First Amended Complaint to Determine the Dischargeability of Debt Pursuant to 11 U.S.C. §523(A)(3), (the "FAC") ¶ 7. Based on the work specified in the Contract, Plaintiffs allege that Defendant knew the work had to be performed by a licensed contractor or it would not be completed properly, and that Defendant knew that Plaintiffs were certain to suffer substantial damages if the work was done by an unlicensed contractor. Id. ¶ 9.

Defendant completed the work described in the Contract on or about May 2013. Decl. of Alexander Yoffe ISO MSJ ("Yoffe Decl."), Ex. H, California Superior Court, First Amended Complaint (the "State Court FAC"), ¶19. Plaintiffs paid Defendant $67,384 for the work done under the Contract. Decl. of Victoria Bacquet ISO MSJ (the "Bacquet Decl."), ¶ 5. Defendant also performed regular pool maintenance through January 26, 2015. FAC, ¶ 16. Plaintiffs allege that Defendant intentionally and falsely represented to Plaintiffs, in writing and orally, that Defendant and "Quality Pool" were properly licensed contractors under the Contractors State License Board. Id., ¶ 14. Defendant provided Plaintiffs with a business card that represented Quality Pool and Defendant obtained a California Contractors License numbered No. 962818. 16. Id., ¶ 15. Plaintiffs contend that Defendant knew that: (1) he was not a licensed contractor, (2) he was not capable of correctly performing the complex work stated in the Contract, and (3) Plaintiffs would suffer substantial damages if he performed the work. Id., ¶ 16.

Plaintiffs allege that because it appeared Defendant had obtained the necessary permits, the business card he presented, and that his oral representations made it seem as if he was capable of performing the work stated in the Contract, Plaintiffs contend that they reasonably and justifiably relied on Defendant's misrepresentations and they believed Defendant was a licensed contractor. FAC, ¶ 26; Bacquet Decl., ¶3. Prior to May 2018, Plaintiffs state that they began to discover that Defendant did not correctly perform the work under the Contract and that there were numerous defects with the work Defendant performed on the pool. Id., ¶ 6. Plaintiffs were substantially damaged by Defendants defective work and his failure to complete the work correctly. FAC, ¶ 33.

After Plaintiffs discovered Defendant did not correctly perform the work and the work suffered from numerous defects, Plaintiffs began to explore potential remedies against Defendant. As part of their efforts, they attempted to look up Defendant's contractor's license and, for the first time, Plaintiff allege they discovered State Contractor's Board License number 962818 was actually registered to "George's Crystal Pool", and not to Quality Pool and/or Defendant. Bacquet Decl., 8. Plaintiffs also allege that they discovered Gevork Zargaryan was the principal of George's Crystal Pool. Id. Defendants also discovered the Contractors State License Board had no listing for anyone named "Aleksanyan", nor was there any listing for a "Quality Pool and Spa Service." Id. Prior to their investigation of Defendant Aleksanyan, Plaintiffs maintain that they had not heard of "George's Pool" or Zargaryan. Id. Plaintiffs state that they had never met Zargaryan and that he had never been to Plaintiffs' residence. FAC, 21. Zargaryan had not performed any work on Plaintiffs' pool. Id.

On February 10, 2015, Plaintiffs allege that an attorney, Michael Kraut of Kraut Law Group wrote that he represented Quality Pool and that he had spoken with Zargaryan. FAC, 22. Plaintiffs did not attach this communication to the FAC or provide it in support of the MSJ.

Plaintiffs allege that Kraut said that Zargaryan informed him he oversaw the complex work stated in the Contract, and Zargaryan authorized Defendant to perform the work stated therein. Id. Kraut also advised that Zargaryan said all of the permits for Plaintiffs' pool were pulled under the license of George's Pool. Id. When Plaintiffs attempted to make a claim on George's Pool's license bond, however, Plaintiffs contend that Zargaryan stated in writing that he stopped doing construction in the beginning of 2012 due to his health condition from a big accident, and he had not done any construction since then. Yoffe Decl., Ex. L. Zargaryan also stated he did not have any contract or paperwork related to Plaintiffs' pool and that he never received any money or anything from Plaintiffs. Id. Plaintiffs state that after all this, they realized that Defendant's prior representations that he was a properly licensed contractor under license number 962818 were false. Bacquet Decl., ¶ 8.

On April 5, 2015, Plaintiffs filed a complaint in the Superior Court of California County of Los Angeles (the "State Court Action"). In the State Court Action, Plaintiffs alleged that prior to entering the Contract, Defendant knowingly and intentionally misrepresented he was a licensed contractor to induce Plaintiffs to hire enter the Contract with him. Yoffe Decl., Ex. H. In their State Court FAC, Plaintiffs also described: (1) certain incorrect work performed by Defendant; (2) the resulting latent defects and deficiencies they had discovered to date; and (3) how they expected to discover additional incorrect work, latent defects, and deficiencies in the future. Id.

Plaintiffs alleged Defendant materially breached the Contract by incorrectly designing, constructing, and performing the work stated in the Contract. Id. They alleged the incorrect design, construction, and other work caused latent defects and deficiencies. Id. In the State Court FAC, Plaintiffs alleged causes of action for Breach of Contract, violation of Business and Professions Code Section 7031, Fraudulent Inducement, Fraud, Negligent Misrepresentation, Negligence, Breach of Implied Warranty of Fitness, and Violation of Business and Professions Code section 17200. Id. After Plaintiffs commenced the State Court Action, the State of California commenced a criminal action against Defendant styled as *People of the State of California v. Robert Aleksanyan*, Case No. 6CJ00003A (the "State Criminal Case").

The Office of the City Attorney advised Plaintiffs Defendant was convicted of unlawfully performing work without a contractor's license and they were invited to provide evidence of their damages at Defendant's restitution hearing. Yoffe Decl., Ex. M; N; and O. On June 8, 2017, the City Attorney's office filed Plaintiff's Brief re: Amounts of Victim Restitution (the "Restitution Brief"). Yoffe Decl., Ex. P. In the Restitution Brief, the City Attorney detailed the charges against Defendant and stated it was uncontroverted that the nature of the work performed by Defendant required a contractor's license and Defendant did not have a license as issued by the Contractor's State License Board. Plaintiffs also received a subpoena to testify at Defendants' restitution hearing. Id., Ex. N and O.

On July 9, 2019, Defendant filed a voluntary chapter 7 petition and did not list Plaintiffs as creditors, nor did he list the State Court Action in the required Statement of Financial Affairs. 1:19-bk-11692-MT, ECF doc. 1.

Plaintiffs contend that Defendant never responded to the State Court FAC and so, on December 8, 2019, Plaintiffs filed a Request (Application) for Judgment. Yoffe Decl., ¶ 22. On December 11, 2019, the Court granted Plaintiffs application for judgment on all causes of action

and the Court awarded Plaintiffs a judgment in the amount of $286,679.94 (the "State Court Judgment"). The State Court Judgment was entered post-petition, without relief from the automatic stay having been granted.

Thereafter, Plaintiffs attempted to execute on the State Court Judgment but were unsuccessful. Yoffe Decl., ¶ 24. In September 2021, attorney Vernon Nelson joined the law firm representing Plaintiff and was tasked with assisting Plaintiffs with judgment enforcement efforts. Id., ¶ 25. As the State Court Judgment was obtained just prior to the onset of the COVID-19 pandemic, Mr. Nelson conducted a search using PACER to determine whether Defendant had filed for bankruptcy. Id. Mr. Nelson discovered that Defendant filed a Chapter 7 Bankruptcy petition in July 2019 and that discharge was entered, without Plaintiffs having gotten notice, on January 13, 2020. 1:19-bk-11692-MT, ECF doc. 26.

While he was addressing the possibilities of filing a Nondischargeability Complaint, Mr. Nelson learned Plaintiffs did not receive notification that Defendant had filed for bankruptcy and that they did not have actual knowledge that Defendant had filed for bankruptcy. Bacquet Decl., ¶ 13. Plaintiffs allege that they did not receive actual or constructive notice of Defendant's Petition in this case because Defendant did not include Plaintiffs on his list of creditors, or otherwise identify Plaintiffs as creditors on the Schedules included as part of his Petition.

## II. Standard

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FRCP 56(c) (incorporated by FRBP 7056).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts that show a genuine issue for trial. Id. at 324. The court must view the evidence in the light most favorable to the nonmoving party. Bell v. Cameron Meadows Land Co., 669 F.2d 1278, 1284 (9th Cir.1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. Hector v. Wiens, 533 F.2d 429, 432 (9th Cir.1976). The inference drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Valadingham v. Bojorquez, 886 F.2d 1135, 1137 (9th Cir.1989). Where different ultimate inferences may be drawn, summary judgment is inappropriate. Sankovich v. Insurance Co. of N. Am., 638 F.2d 136, 140 (9th Cir.1981).

## III. Discussion

Pursuant to Federal Rule of Civil Procedure 36, with respect to properly served requests for admission, "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection . . . ." FED. R. CIV. P. 36(a)(3). Moreover, "[a] matter admitted under this rule is conclusively established . . . ." Id. at 36(b).

A. 11 U.S.C. §523(a)(3)(B)

11 U.S.C. § 523(a)(3)(B) excepts from discharge unscheduled debts of a kind specified paragraphs (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request.

Plaintiffs allege that they did not learn that Defendant filed a chapter 7 petition until September 2021, when their state court attorney conducted a PACER search during collection efforts and discovered that Defendant filed a chapter 7 petition on July 9, 2019. Because they were not scheduled as creditors, Plaintiffs did not receive notice of the filing and contend that they did they not have actual knowledge of the bankruptcy filing until September 2021. Defendant does not dispute this. Thus, this Amended Complaint is properly brought under § 523(a)(3(B) to determine if the debt qualifies as a debt arising under § 523(a)(2) and/or § 523(a)(6).

B. The Default Judgment in the State Court Action is Void as it was Entered in Violation of the Automatic Stay

Plaintiffs acknowledge in their Reply that the Default Judgment is void. Instead, Plaintiffs point to the Complaint and the other evidence that supports their nondischargeability claims. To the extent that the Court addresses the Default Judgment in its analysis, it is only to show where it would be deficient to support summary judgment, even if it were not void.

Because the default judgment is void, Defendant's evidentiary objection to it and the attached exhibits is sustained except to the extent documents are authenticated elsewhere or otherwise self-authenticating.

C. 11 U.S.C. §523(a)(2)(A)

To prevail under this section the plaintiff must demonstrate that:

(1) the debtor made a false representation;
(2) at the time the debtor knew the representation was false;
(3) the debtor made the representation deliberately and intentionally with the intention and purpose of deceiving the creditor;
(4) the creditor justifiably relied on the representation; and
(5) the creditor sustained loss and damage as a proximate result of the representation having been made.

11 U.S.C. §523(a)(2).

*Defendant made a false representation*

Defendant was not the person licensed with the state contractor's board, under the number listed on his business paperwork. Defendant also appears to have pled to a violation of Bus. & Prof. Code § 7153, which necessitated his stipulation to this fact. Yoffe Decl., Ex. P.

There is no genuine issue as to this fact and Plaintiffs are entitled to a finding of undisputed fact on this element.

Defendant's evidentiary objections to Exhibits A – F are overruled. These are admissions by Defendant or authenticated by the Yoffe and Kennedy declarations under oath. Exhibit O is a public record. Exhibit P is admitted not for the truth of the matter but simply the fact that it was filed in the Criminal case.

*Debtor knew the representation was false when it was made*

At the time of his interactions with Plaintiffs and his entering the Contract, Defendant knew the representation that he was the licensed contractor entitled to use that number was false; he knew he did not have a license. Defendant has previously averred that he thought he had permission to use Zagaryan's license as some sort of subcontractor but his paperwork and Contract did not reflect that distinction. His paperwork listed the license number as belonging to his company and Defendant knew that was not true. There is also no genuine issue as to this fact.

*The Criminal Conviction and Order of Restitution Do Not Establish that Defendant made the Representation with the Intention and Purpose of Deceiving Plaintiffs*

Plaintiffs argue that the criminal conviction establishes that the representation was false, and that Defendant knew his representation was false when it was made. Reply, 3:27-4:2. The criminal conviction was for violating Cal. Bus. & Prof. Code § 7153, selling a home improvement construction contract without proper registration, *i.e.*, a contractor's license. Defendant was charged with other violations but only convicted of the one. See Yoffe Decl., Ex. P, internal p. 3:3-8. Cal. Bus. & Prof. Code § 7153, selling without registration, states:

(a) It is a misdemeanor for any person to engage in the occupation of salesperson for one or more home improvement contractors within this state without having , at the time of the sales transaction, a current and valid home improvement salesperson registration issued by the registrar. If, upon investigation, the registrar has probable cause to believe that a salesperson is in violation of this section, the registrar may issue a citation pursuant to Section 7028.7.

It is a misdemeanor for any person to engage in the occupation of salesperson of home improvement goods or services within this state without having, at the time of the sales transaction, a current and valid home improvement salesperson registration issued by the registrar.

(b) Any security interest taken by a contractor, to secure any payment for the performance of any act or conduct described in Section 7151 that occurs on or after January 1, 1995, is unenforceable if the person soliciting the act or contract was not a duly registered salesperson or was not exempt from registration pursuant to Section 7152 at the time the homeowner signs the home improvement contract solicited by the salesperson.

Cal. Bus. & Prof. Code § 7153.

There is no *mens rea* finding required under § 7153, and the order of restitution is akin to strict liability under Cal. Penal Code § 1202.4(f). Under § 1202.4(f), restitution is ordered:

> [I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court.

Cal. Penal Code § 1202.4(f)

The direct restitution order is to be for an amount "sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct." Cal. Penal Code § 1202.4(f)(3). In the *Brief re Amount of Victim Restitution*, the State requested that Defendant be ordered to pay restitution of $151,499.85 but Plaintiffs note in their Complaint that the Court ordered restitution in the amount of $20,000, which was paid pre-petition. Yoffe Decl., Ex. P; MSJ, 3:16-17. There is no record provided to explain why the State Court ordered a markedly smaller amount of $20,000 rather than the requested $151,499.85 but it does show that the criminal conviction is less probative of Defendant's fraudulent intent than Plaintiffs suggest.

> *The Evidence Offered Does Not Establish that Defendant made the Representation with the Intention and Purpose of Deceiving Plaintiffs*

The Amended Complaint reiterates the allegations made to support the Default Judgment and relies on the same law to support the amount of their alleged nondischargable debt. Plaintiffs argue that the only reasonable inference that can be drawn from the documentary evidence and Plaintiff Victoria's declaration, is that Defendant made the false representation to Plaintiffs that he was a licensed contractor to induce Plaintiffs into signing the Contract based on that misrepresentation. The Bankruptcy Appellate Panel of the Ninth Circuit (the "BAP") in Ghomeshi v. Sabban held that the findings required for disgorgement awards under Cal. Bus. & Prof. Code 7031(b) are not sufficient, by themselves, to establish nondischargeability for fraud under § 523(a)(2). Ghomeshi v. Sabban (In re Sabban), 384 B.R. 1, 6-7 (B.A.P. 9th Cir. 2008) aff'd in part, 600 F.3d 1219 (9th Cir. 2010). As a disgorgement award under §7031(b) does not require that the liability arise from the fraud, and the statute "is neutral" as to fraudulent intent, the BAP found that the award in Ghomeshi was unrelated to the debtor's fraud. Id. at 7.

Defendant maintains that before entering into the Contract, he did business with Zargaryan, who was his neighbor and had worked with him previously on numerous pool projects. Declaration of Robert Aleksanyan ISO Opposition, ¶ 56. Defendant asserted that he believed that he was the responsible managing officer for Zagaryan's pool business and that he was authorized by Zargaryan to do business under his contractor's license. Id. "Proof of intent for the purposes of § 523(a)(2)(A) must be measured by a debtor's subjective intention at the time of the transaction in which the debtor obtained the money, property or services." In re Johnson, 638 B.R. 782, 794 (Bankr. C.D. Cal. 2022).

The Court cannot say, on this record, that the evidence shows Defendant knew he was not entitled to use George's license when soliciting jobs. Plaintiffs argue that Zargaryan submitted a declaration under penalty of perjury in the State Court Action in which he explained that he had no knowledge, prior to service of the complaint in the State Court Action, that Defendant was working under his license. Yoffe Decl., Ex. L, internal ¶ 8-11; 15-18. Zargaryan stated that he spoke with Defendant and that Defendant admitted to him that he was doing construction under his business and contractor's license without his knowledge or consent. Id., ¶ 31. Zargaryan stated in the declaration that Defendant represented that Defendant would defend him in the State Court Action. Id., ¶ 32.

Although Zargaryan, at that point in time, asserts that he knew that Defendant had used his contractor's license to solicit business and "pull permits" for construction of Plaintiffs' pool without his authorization, Zargaryan nevertheless, for some inexplicable reason "entrusted Aleksanyan to [defend him in the state Court Action]. Later, I found out that Aleksanyan was not defending me in this action." Id. Zargaryan's admitted agreement to a mutual defense strategy with Defendant in the State Court Action casts doubt on the assertion that Defendant was a rogue fraudster using Zargaryan's license and business names without permission. Under these circumstances, Defendant's subjective belief that he was working under Zargaryan's license *at the time of the transaction* pursuant to some agreement with him does not seem as unreasonable as it otherwise might. Reasonable inferences must be made in favor of the non-moving party at this point, and Debtor-Defendant's state of mind or belief on this issue is critical here. Further information is needed as to Defendant's intent, or there must be a trial where the court would be permitted to make inferences against the Defendant. Summary judgment is inappropriate on this issue on this record.

*Plaintiffs have shown that they justifiably relied on the misrepresentation*

As explained above, Plaintiffs could have been awarded disgorgement under Cal. Bus. & Prof. Code § 7031(b), even if they had known before entering the Contract that Debtor was unlicensed. A disgorgement award under § 7031(b) is thus unrelated to Debtor's fraud, and "could have been granted in the absence of justifiable reliance, another essential element of § 523(a)(2)(A)." Ghomeshi, at 7.

Plaintiffs maintain that, given Defendant's representations in the Contract, his business card, and other oral representations he made to them, their reliance on Defendant's false representations that he was licensed was justifiable. Bacquet Decl., ¶3. Plaintiffs contend that they would not have entered the Contract with Defendant and allowed him to undertake the complex work stated in the Contract, if they had known Defendant was not a licensed contractor. Id., ¶ 9.

Plaintiff Victoria's explanation in her declaration about how her reliance on letterhead and business cards to show Defendant's licensed status was justifiable is not contradicted anywhere. In her Declaration, Plaintiff Victoria admits that she knew the work outlined in the Contract was "complex" and that the amount due under the Contract for the work was $67,384, a not-insignificant amount of money. While the Plaintiffs could have done further due diligence, an average homeowner should be able to rely on a contractor's representation about a license where the license number is provided. In fact, the way the representations are made on the card and letterhead appears intended to induce just such reliance.

*There is a question of material fact as to whether Plaintiffs sustained loss and damage as a proximate result of Defendant's Misrepresentation*

Plaintiffs contend that Defendant's debt amounts to $375,392.03, including the amount remaining to be disgorged, less the $20,000 restitution award ($47,384.00), treble damages ($142,152.00), prejudgment interest ($35,136.86), and attorneys' fees ($145,015.00) and costs ($5,704.17), when calculated through the filing of the Petition. Yoffe Decl., 28-30; 32.

In Cohen v. de la Cruz, the U.S. Supreme Court considered the case of a landlord who charged rents above the amount permitted by local ordinance. Cohen v. de la Cruz, 523 U.S. 213, 215 (1998). The city rent control administrator ordered the landlord to return the excess rents. Id. The landlord refused to comply and subsequently filed for bankruptcy. Id. The tenants initiated an adversary proceeding in the bankruptcy court under a New Jersey statute that provided for the recovery of treble damages from any person who has used "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation ... in connection with the sale or advertisement of any merchandise or real estate...." Id.  Following a bench trial, the bankruptcy court found that the landlord had committed "actual fraud" within the meaning of § 523(a)(2)(A), and that his actions violated the New Jersey Consumer Fraud Act. Id. at 215–16. The bankruptcy court awarded treble damages under the New Jersey statute and held the entire award nondischargeable. Id. at 216.

The Supreme Court affirmed, holding that the entire award arose out of the fraud and was therefore nondischargeable. Id. at 218–19, 223. Justice O'Connor wrote that "[Section] 523(a)(2)(A) is best read to prohibit the discharge of any liability arising from a debtor's fraudulent acquisition of money, property, etc., including an award of treble damages for the fraud." Id. at 221. "Under New Jersey law, the debt for fraudulently obtaining $31,382.50 in rent payments includes treble damages and attorney's fees and costs, and consequently, petitioner's entire debt of $94,147.50 (plus attorney's fees and costs) is nondischargeable in bankruptcy." Id. at 223.

The Ninth Circuit distinguished Cohen when it considered the appeal of the BAP's decision in In re Sabban, 600 F.3d 1219 (9th Cir. 2010).  In the underlying state court case, the state trial court declined to award damages under Cal. Bus. & Prof. Code § 7160, concluding that "[t]echnically there are no damages." In re Sabban, 600 F.3d 1219 at 1221.  Appellant Ghomeshi argued before the Ninth Circuit that even if he did not suffer actual loss as a result of Sabban's fraudulent misrepresentation that his home remodeling business was licensed, the disgorgement award of $123,000 under Cal. Bus. & Prof. Code § 7031 is "traceable to" or "resulting from" the fraud and is therefore nondischargeable. Id. at 1223. Appellant stressed that the state court found that Sabban made a fraudulent misrepresentation that induced him to enter into a contract with Sabban's home improvement company, and that the court awarded Appellant $123,000 for Sabban's violation of § 7031(b).

In holding that the judgment against Sabban under § 7031(b) was dischargeable, the Ninth Circuit noted two ways in which Ghomeshi is different from Cohen. First, unlike the tenants in Cohen, Ghomeshi suffered no actual harm as a result of Sabban's misrepresentation that his company held a contractor's license. While actual damages were available under § 7160, the state court specifically declined to award them, holding that Ghomeshi had suffered no harm.

Id. at 1224. Second, unlike the New Jersey statute at issue in Cohen, § 7031(b) is not premised on the commission of fraud. Instead, a plaintiff in a § 7031(b) suit need only show that the contractor was unlicensed. Id.; see Cal. Bus. & Prof. Code § 7031(b).

> To the extent that California has a statute comparable to the New Jersey Consumer Fraud Act, it is § 7160, under which Ghomeshi was awarded the $500 penalty and attorney's fees. Section 7160, like the New Jersey statute, is premised on fraud. Section 7160 provides that "[a]ny person who is induced to contract for a work of improvement ... in reliance on false or fraudulent representations or false statements knowingly made," may recover a $500 penalty, reasonable attorney's fees, and actual damages. In accordance with Cohen, the bankruptcy court in our case held that the state court award of $500 plus attorney's fees under § 7160 was nondischargeable. Sabban has not appealed that part of the bankruptcy court's judgment.

In re Sabban, 600 F.3d 1219, 1224 (9th Cir. 2010).

The $47,384, the remainder due for disgorgement of money paid to Defendant, is dischargeable for the reasons explained above. The restitution damages under Cal. Bus. & Prof. Code § 7031 are dischargeable under § 523(a)(2) because the statute under which disgorgement is awarded does not consider whether there was fraudulent conduct by Defendant. Likewise, the prejudgment interest on the $47,384 for disgorgement is also dischargeable.

Plaintiffs include treble damages of $142,150 (the disgorgement remainder of $47,384, multiplied by three) under Code of Civil Procedure section 1029.8. C.C.P. § 1029.8 provides for treble damages and attorney fees against "[a]ny unlicensed person" whose work injures another person. This statute caps the permissible treble damages award at $10,000. Id., subds. (a) & (c). The California Court of Appeal for the Second District explained that the treble damage provision under C.C.P. § 1029.8 "is an additional noncompensatory damage provision" that is a "statutory damage multiplier [that] creates a supplemental incentive to maintain proper licensure. The incentive is potent to the point of having penal attributes." Karton v. Ari Design & Constr., Inc., 61 Cal. App. 5th 734, 740 (Cal. Ct. App. 2021), *as modified on denial of reh'g* (Mar. 29, 2021), review denied (June 23, 2021), citing Rony v. Costa 210 Cal.App.4th 746, 757 (Cal. Ct. App. 2012). Plaintiffs are silent on the $10,000 cap on this treble damage provision but the statutory intent is clear – these damages are to strongly discourage unlicensed people from performing services for which a license is required. There is nothing in the language of C.C.P. § 1029.8 that would require different treatment for treble damages award thereunder. In other words, this statute also suffers from the same fatal defect - a plaintiff requesting damages under C.C.P. § 1029.8 need only show that the contractor was unlicensed and that there were damages assessed in a civil action. There is no requirement for a showing of fraudulent intent.

Further, under C.C.P. § 1029.8(a), Plaintiffs must show evidence of the damages to their property and persons caused "as a result of providing goods or performing services for which a license is required …" C.C.P. § 1029.8(a). Attached to the *Brief re Criminal Restitution*, the State included estimates for the work it that was required to repair the damage that was caused by Defendant performing services for which he was unlicensed, which showed the cost to repair Plaintiffs' pool was approximately $15,950. Yoffe Decl., Ex. P, 9:20-25; internal ex. 6-7. Plaintiffs also admit that sometime in January 2018, Defendant tendered the $20,000 criminal

restitution that was ordered. Id.; see also Penal Code § 1202.4(f)(3)(A) (in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court). On the record before the Court, Plaintiffs have not sustained their burden to show that there is no material fact as to whether their damages were proximately caused by Defendant's misrepresentation, as it is unclear whether the damages claimed are statutorily imposed as public policy, rather than due to causation from fraud. This analysis also applies to the request for a nondischargeable judgment an award of attorney's fees under C.C.P. § 1029.8(f)(3)(H). Summary judgment is inappropriate on this issue. Because of this ruling, the evidentiary objections on the damages documents are irrelevant, and the court will abstain from ruling on them unless necessary at trial.

### D. 11 U.S.C. §523(a)(6)

Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. §523(a)(6). Under § 523(a)(6), Defendant's actions would need to equate with "willful and malicious" injury within the meaning of the Code. The first step of this inquiry is whether there is "willful" injury, which must entail a deliberate or intentional injury. Kawaauhau v. Geiger, 523 U.S. 57, 61-62 (1998). This generally requires establishing that the debtor committed an intentionally tortuous act. Id. In the Ninth Circuit, the intent required to be considered "willful" is either the subjective intent of the actor to cause harm or the subjective knowledge of the actor that harm is substantially certain to occur. Carrillo v. Su (In re Su), 290 F.3d 1140, 1144-45 (9th Cir. 2002).

The second step of the inquiry is whether Debtors' conduct was "malicious." The relevant test for such "malicious" conduct is: 1) a wrongful act; 2) done intentionally; 3) which necessarily causes injury; and 4) without just cause and excuse. Jett v. Sicroff (In re Sicroff), 401 F.3d 1101, 1105-1106 (9th Cir. 2005).

The statutory scheme set out in § 523(a) indicates that nondischargeability claims alleging fraud should be brought under § 523(a)(2)(A). See McCrary v. Barrack (In re Barrack), 201 B.R. 985, 990-91 (Bankr.S.D.Cal.1996) (finding that the more specific statute, § 523(a)(2)(A), controls fraud nondischargeability rather than the more general statute, § 523(a)(6)), reversed on other grounds, 217 B.R. 598 (B.A.P. 9th Cir. 1998). Indeed, § 523(a)(2)(A) expressly applies to debts "for money" obtained by "actual fraud."

The Supreme Court, however, has suggested that nondischargeability claims based on fraud fall within the ambit of § 523(a)(6) only if: (1) the debtor fraudulently obtained something other than money, property, or services; or (2) the fraud claim involved punitive damages. Grogan v. Garner, 498 U.S. 279, 282 n. 2 (1991). The Supreme Court has since clarified that all damages (both actual and punitive) resulting from a debtor's fraud are nondischargeable under § 523(a)(2)(A). See Cohen v. De La Cruz, 523 U.S. 213 (1998).

Plaintiff alleges the same set of facts support a judgment under § 523(a)(6) without specifying what additional facts that would rise to the level of "willful and malicious" as defined under 11 U.S.C. § 523(a)(6). Instead, Plaintiffs argue the same set of facts, and couch them in terms used under § 523(a)(6). On summary judgment, evidence of willful intent and malicious

conduct is required and so Plaintiffs have not demonstrated that they are entitled to judgment as a matter of law.

**Conclusion**

For the reasons explained above, Summary Judgment is DENIED on both the § 523(a)(2)(a) and (a)(6) causes of action because there is a material disputed fact as to whether the debtor made the representation deliberately and intentionally with the intention and purpose of deceiving the creditor and whether the creditor sustained loss and damage as a proximate result of the representation having been made.

Because there was no dispute of material fact as to the following issues, the following do not need to be proven at the subsequent trial:

- Under § 523(a)(2)(a):
    - the debtor made a false representation that he was a licensed contractor
    - at the time the debtor knew that representation was false
    - the creditor justifiably relied on the representation

Defendant shall submit an order within 10 days as the prevailing party.

###

Date: August 19, 2022

Maureen A. Tighe
United States Bankruptcy Judge

-12-